## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| SEAN WAGNER, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) Case No. 16-cv-10961 |
| v. | ) ) ) |
| GENERAL NUTRITION CORPORATION, | ) ) **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Sean Wagner ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this Class Action Complaint against Defendant General Nutrition Corporation ("GNC" or "Defendant"), and complains and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by counsel.

## NATURE OF THE ACTION

1.       This is a consumer class action brought on behalf of consumers who purchased GNC's L-Glutamine dietary supplements Pro Performance® L-Glutamine Powder 5000, Pro Performance® L-Glutamine 1500, Pro Performance® RapidDrive Glutamine 2500 Power Chew, and Pro Performance® RapidDrive Glutamine 5000 (the "Products"). GNC engaged in unfair and/or deceptive business practices by misrepresenting the nature and quality of the Products on the Products' labels, and was unjustly enriched.

2.    GNC is the world's largest specialty retailer of dietary supplements. On its website, GNC promises consumers that it "sets the standard in the nutritional supplement industry by demanding truth in labeling, ingredient safety and product potency[.]"[1]

3.    GNC advertises, manufactures, markets, sells and distributes the Products throughout the United States, including in the State of Illinois.

4.    GNC, like many companies in the bodybuilding supplement industry, totally ignores competent and reliable scientific data regarding their products and ingredients.

5.    GNC's Products are generally categorized as "L-Glutamine" products.

6.    L-Glutamine ("L-Glutamine" and "Glutamine" as used herein are synonymous) is a naturally-occurring, nonessential, neutral amino acid. It is important as a constituent of proteins and as a means of nitrogen transport between tissues. It is "nonessential" because the human body produces its own glutamine.

7.    Glutamine is the most abundant free amino acid in human skeletal muscle and plasma.

8.    The effects of acute exercise on plasma glutamine appear to be largely dependent on the duration and intensity of exercise.

9.    Many healthy people are under the impression, perpetuated by the likes of Defendant here, that a supplemented intake of glutamine has beneficial effects. This is frequently the case among athletes and bodybuilders, who commonly consume glutamine one to three times daily.

10.   Glutamine supplementation doses range from 2 to 40 grams per day, which represents 3% to 60% of the recommended intake of amino nitrogen.

---

[1] *Media Room*, GNC LIVE WELL, http://gnc.mediaroom.com/ (last visited Nov. 30, 2016).

11.     Simply because a substance, such as glutamine, is a nutrient, does not necessarily mean that its enhanced use is beneficial. Glutamine naturally found within the body does play a role in certain mechanisms supporting muscle growth, recovery and immunity support.

12.     However, as noted in the numerous scientific citations contained herein, glutamine supplementation has been found to be completely ineffective at mimicking these physiological responses.

13.     Simply put, the ingestion of GNC's Products does absolutely nothing for the recovery from exercise, recovery of muscle tissue or ability to decrease muscle wasting (anti-catabolic).

## PARTIES

14.     During the Class period, Class members in Illinois and throughout the United States purchased the Products through Defendant's numerous brick and mortar and online retail stores.  Plaintiff and Class members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices set forth in this Class Action Complaint.

15.     Plaintiff Sean Wagner is a citizen of the State of Illinois. At relevant times to this matter, he resided, and continues to reside, in Chicago, Illinois. In July 2016, Plaintiff purchased GNC's Pro Performance® L-Glutamine Powder 5000 dietary supplement for his own use from a GNC retail store in Chicago, Illinois for approximately $29.99.

16.     Defendant General Nutrition Corporation is a privately-held Pennsylvania corporation with its principal place of business located at 300 Sixth Avenue, Pittsburgh, Pennsylvania. GNC is a health and fitness company that sells various weight loss, bodybuilding, nutritional supplements, and vitamins, including glutamine dietary supplements.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some members of the Classes are citizens of States other than the State in which GNC is incorporated and has its principal place of business.

18.     Diversity jurisdiction exists because Plaintiff is a citizen of Illinois and GNC is a citizen of Pennsylvania.

19.     This Court has personal jurisdiction over GNC because it conducts business in Illinois. GNC has marketed, distributed, and sold the Products in Illinois. GNC has sufficient minimum contacts with this State, and/or sufficiently avails itself to the markets of this State through its sales and marketing within this State to render the exercise of jurisdiction by this Court permissible.

20.     This Court has personal jurisdiction over GNC because it has continuous and systematic contacts with Illinois. GNC owns and operates dozens of retail stores in this District and regularly sells its products to Illinois residents.[2] Further, in addition to selling the Products in its retail stores, this Court has personal jurisdiction over GNC because its Internet website allows consumers to order and ship the Products anywhere in the United States, including in this District.[3] GNC conducts business throughout the United States, including in the State of Illinois and in this District.

---

[2] *See* GNC Locations – Chicago, IL, GNC, http://stores.gnc.com/search/il/
chicago?t=&q=chicago%2C+il&page=1 (listing numerous GNC retail locations in Chicago, Illinois) (last visited Nov. 30, 2016).
[3] *See* International Shipping, GNC, https://www.gnc.com/helpdesk/
popup.jsp?display=ship&subdisplay=international (offering product shipment to the United States as well as to Australia, Canada, Chile, and Japan) (last visited Nov. 30, 2016).

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Venue is also proper under 18 U.S.C. § 1965(a) because GNC transacts substantial business in this District.

<u>**FACTUAL ALLEGATIONS**</u>

22.     The front of GNC's Products' labels clearly state that the Products provide "Anti-Catabolic Effects," "Supports Muscle Function," and/or "Supports Faster Recovery After Workouts."









23.     GNC's recovery, muscle, and anti-catabolic claims, however, are blatantly false according to numerous scientific research papers, as contained herein.

24.     "Recovery" in bodybuilding is the process of the fatigued muscles to recuperate and grow after resistance training. This process enables the body to undergo muscle growth.

25.     "Anti-Catabolic" refers to the ability of a product to decrease muscle wasting in the user during exercise.

26.     In one study, glutamine failed to affect muscle protein kinetics of the test subjects.[4]

---

[4] Gore D., Wolfe R. Glutamine supplementation fails to affect muscle protein kinetics in critically ill patients. *JPEN J Parenter Enteral Nutr*, 2002, 26:342-49.

27.     In a study involving healthy humans, glutamine was continuously infused for 2.5 hours at a rate corresponding to 0.4 grams/kg, which revealed that glutamine supplementation did not stimulate muscle protein synthesis.[5]

28.     Another study investigated the effect of L-Glutamine supplementation on the plasma and muscle tissue glutamine concentrations of exercise-trained rats, both immediately and three hours after a single exercise session until exhaustion. In that study, rats were subjected to 60 minutes of swimming exercise daily for six weeks. During the final three weeks, one group was given a daily dose of L-Glutamine (1 gram/kg). The plasma and muscle glutamine levels were higher than placebo during the post-exhaustive recovery period; however, this increase had no effect on the exercise swim test to exhaustion performance, which means that elevations in plasma and muscle glutamine levels have no benefit on muscle performance.[6]

29.     An additional study was also conducted to assess the effect of oral glutamine supplementation combined with resistance training in young adults. Subjects received either placebo (0.9 grams/kg fat-free mass/day of maltodextrin) or L-Glutamine (0.9 grams/kg fat-free mass/day) during six weeks of resistance training. Results showed that muscle strength, torque, fat-free mass, and urinary 3-methyl histidine (a marker of muscle protein degradation) all significantly increased with training, but were not different between the groups. This study demonstrated that L-Glutamine supplementation during resistance training had no significant

---

[5] Svanberg E., Moller-Loswick A., Matthews D., Korner U., Lundholm K. The effect of glutamine on protein balance and amino acid flux across arm and leg tissues in healthy volunteers. *Clin Physiol*, 2001, 4:478-89.
[6] Rogero M., Tirapequi J., Pedrose R., Castro I., Pires I. Effect of alanyl-glutamine supplementation on plasma and tissue glutamine concentrations in rats submitted to exhaustive exercise. *Nutrition*, 2006, 22:564-71.

effect on muscle performance, body composition, or muscle protein degradation in young, healthy adults.[7]

30.     Moreover, a study was performed to examine the effects of a combination of effervescent creatine, ribose, and glutamine on muscle strength, endurance, and body composition in resistance-trained men. Subjects performed resistance training while ingesting either a placebo or an experimental supplement (5 grams of creatine, 3 grams of glutamine, and 2 grams ribose) for eight weeks. Both groups significantly improved muscle strength, endurance, and fat-free mass, yet the groups were not significantly different from one another. Therefore, the experimental supplement, which included glutamine, was no more effective than placebo in improving skeletal muscle adaptation to resistance training.[8]

31.     Another study sought to determine the effects of eight weeks of creatine monohydrate and glutamine supplementation on body composition and performance measures. Subjects were randomly assigned to receive either placebo for eight weeks, creatine monohydrate (0.3 grams/kg/day for one week and then 0.03 grams/kg/day for seven weeks), or the same dose of creatine in addition to 4 grams of glutamine per day while engaged in a resistance training program. Body mass and fat-free mass increased in the creatine and creatine + glutamine groups at a greater rate than with placebo. Additionally, the two experimental groups underwent a significantly greater improvement in the initial rate of muscle power production compared to placebo. These results suggest that the creatine and creatine +

---

[7] Candow D., Chilibeck P., Burke D, Davison K., Smith-Palmer T. Effect of glutamine supplementation combined with resistance training in young adults. *Eur J Appl Physiol*, 2001, 86:142-49.
[8] Falk D., Heelan K., Thyfault J., Koch A. Effects of effervescent creatine, ribose, and glutamine supplementation on muscle strength, muscular endurance, and body composition. *J Strength Cond Res*, 2003, 17:810-16.

glutamine groups were equally effective in producing skeletal adaptation to resistance training and that glutamine apparently had no preferential effect in augmenting the results.[9]

32.     One study was performed to determine if high-dose glutamine ingestion affected weightlifting performance. In a double-blind, placebo-controlled, crossover study, resistance-trained men performed weightlifting exercises one hour after ingesting placebo (calorie-free fruit juice) or glutamine (0.3 g/kg) mixed with calorie-free fruit juice. Results demonstrated no significant differences in weightlifting performance (maximal repetitions on the bench press and leg press exercises), indicating that the short-term ingestion of glutamine did not enhance weightlifting performance in resistance-trained men.[10]

33.     Similarly, another study sought to determine whether glutamine ingestion influenced acid-base balance or improved high-intensity exercise performance. Trained males performed five exercise bouts on a cycle ergometer at 100% of maximal oxygen consumption. The first four bouts were 60 seconds in duration, while the fifth bout was continued to fatigue. Each bout was separated by 60 seconds of recovery. The exercise bouts were initiated 90 minutes after ingesting either placebo or 0.3 grams/kg of glutamine. Results showed that blood pH, bicarbonate, and lactate, along with time to fatigue, were not significantly different between supplement conditions, indicating that the acute ingestion of L-Glutamine did not enhance either buffering potential or high-intensity exercise performance in trained males.[11]

34.     Another study determined whether oral glutamine, by itself or in combination with hyperoxia, influenced oxidative metabolism or cycle time-trial performance in men.

---

[9] Lehmkuhl M., Malone M., Justice B., Trone G., Pistilli E., Vinci D., Haff E., Kilgore L., Haff G. The effects of 8 weeks of creatine monohydrate and glutamine supplementation on body composition and performance measures. *J Strength Cond Res*, 2003, 17:425-38.
[10] Antonio J., Sanders M, Kalman D., Woodgate D., Street C. The effects of high-dose glutamine ingestion on weightlifting performance. *J Strength Cond Res*, 2002, 16:157-60.
[11] Haub M., Potteiger J., Nau K., Webster M., Zebas C. Acute L-glutamine ingestion does not improve maximal effort exercise. *J Sports Med Phys Fitness*, 1998, 38:240-44.

Subjects ingested either placebo or 0.125 grams/kg of glutamine one hour before completing a brief high-intensity time-trial (approximately four minutes in duration). The results showed no significant difference in pulmonary oxygen uptake during the exercise test, thereby indicating no effect of glutamine ingestion either alone or in combination with hyperoxia. Thus, there was no limiting effect of the tricarboxylic acid intermediate pool size on oxidative metabolism or performance during exercise.[12]

35. Plaintiff and members of the Classes purchased and consumed the Products because they believed, based upon the misleading labels, that they enhanced muscle growth, provided faster recovery, and had anti-catabolic properties.

36. GNC's labeling of the Products was misleading to Plaintiff and members of the Classes.

37. Plaintiff and members of the Classes were in fact misled by GNC's representations regarding the efficacy of the Products.

38. The difference between the Products promised and the Products sold are significant. The lack of benefits provided to consumers by the Products fully diminishes the actual value of the Products.

39. Plaintiff and other members of the Classes would not have bought GNC's Products if they had known that the Products did not provide the health benefits as advertised on the label.

40. GNC's deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food misbranded when the label contains a statement that is "false or misleading in any particular."

---

[12] Marwood S., Botwell J. No effect of glutamine supplementation and hyperoxia on oxidative metabolism and performance during high-intensity exercise. *J Sports Sci*, 2008, 26:1081-90.

41.     The United States Food and Drug Administration (the "FDA") promulgated regulations for compliance with the Federal Food, Drug, and Cosmetic Act (the "FDCA") and the Dietary Supplement Health and Education Act (the "DSHEA") at 21 C.F.R. § 101, *et seq.* GNC's fabricated food Products are misbranded under 21 C.F.R. § 101, *et seq.*

42.     Illinois has also expressly adopted the federal food labeling requirements as its own: "A federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21. Thus, a violation of federal food labeling laws is an independent violation of Illinois law and actionable as such.

43.     Pursuant to 410 ILCS 620/11, which mirrors 21 U.S.C. § 343(a), "A food is misbranded – (a) If its labeling is false or misleading in any particular."

44.     The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Complaint.

45.     Also, the Illinois Consumer Fraud and Deceptive Business Practices Act, which serves to protect GNC's consumers, provides that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful . . . ."

815 ILCS 505/2.

46.     Plaintiff and members of the Classes would not have purchased the Products had they known the truth about the mislabeled and falsely advertised Products.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this class action lawsuit on behalf of himself and proposed Classes of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

48.     Plaintiff seeks certification of the following Classes:

> **National Class:** All persons in the United States who purchased the Products.

> **Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who purchased the Products.[13]

> **Illinois Subclass:** All persons in the State of Illinois who purchased the Products.

Excluded from the Classes are GNC and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

49.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

50.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiff, but may be

---

[13] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 ILCS 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

ascertained from GNC's books and records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

51. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting only individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

    a) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

    b) Whether GNC's actions violate the state consumer fraud statutes invoked below;

    c) Whether GNC breached an express warranty to Plaintiff and members of the Classes; and

    d) Whether GNC was unjustly enriched at the expense of the Plaintiff and members of the Classes.

52. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and the other members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

53. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation the laws as complained of herein. Further, the damages of each member of the Classes were caused directly by Defendant's wrongful conduct in violation of the laws as alleged herein.

54.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**
Plaintiff is an adequate Class representative because he is a member of the Classes and his interests do not conflict with the interests of the other members of the Classes he seeks to represent. Plaintiff has also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiff and his counsel intend to prosecute this action vigorously for the benefit of all members of the Classes. Accordingly, the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

55.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**
Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

56.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct. Even if members of the Classes could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS ALLEGED

### COUNT I
**Violation of State Consumer Fraud Acts**
**(On Behalf of the Consumer Fraud Multi-State Class)**

57.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

58.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class[14] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

59.     Defendant intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

60.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

61.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

### COUNT II
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(In the Alternative to Count I and On Behalf of the Illinois Subclass)**

62.     Plaintiff incorporates paragraphs 1 through 56 as if fully set forth herein.

63.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in

---

[14] California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 ILCS 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose. 815 ILCS 505/11a.

64.     Defendant's conduct in representing the benefits of its Products constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

65.     Defendant intended that Plaintiff and each of the other members of the Illinois Subclass would rely on its representations. The sole purpose of glutamine is its supposed ability to assist in recovery, enhance muscle recovery, as well as have anti-catabolic properties, and Defendant intended to prey on these misconceptions.

66.     These misrepresentations are material because they concern the type of information upon which a reasonable consumer would be expected to rely upon in making a decision whether to purchase the Products.

67.     Because Defendant is in the business of selling dietary supplement products, Defendant committed unfair and deceptive acts in the conduct of its trade and commerce.

68.     Defendant's practice of misrepresenting the Products is also unfair because it offends public policy and is immoral, unethical, and unscrupulous. Illinois consumers are being misled about the very efficacy and purpose of the Products. Misrepresenting the Products offends the public's expectation to be told the truth about the products they are buying.

69.     Defendant's conduct also causes substantial injury to consumers. Not only are consumers being misled into purchasing Products that are not what they are represented to be, but consumers are paying for and ingesting Products with absolutely no value or benefit.

70.     Because the Products have no efficacy, the Products sold are worth less than the Products as represented, and Plaintiff and members of the Illinois Subclass paid a premium for

them. Had the truth been known, Plaintiff and members of the Illinois Subclass would not have purchased the Products.

71.     Plaintiff and members of the Illinois Subclass were deceived by the labeling on the Products and suffered economic damages as a proximate result of Defendant's unlawful conduct as alleged herein, including the difference between the actual value of the Products and the value of the Products if they had been as represented.

72.     Plaintiff also seeks to enjoin Defendant's ongoing deceptive practices relating to its claims on the Products' labels and advertising.

**COUNT III**
**Breach of Express Warranty**
**(On Behalf of the National Class)**

73.     Plaintiff incorporates paragraphs 1 through 56 as if fully set forth herein.

74.     Plaintiff, and each member of the National Class, formed a contract with Defendant at the time Plaintiff and the other members of the National Class purchased the Products. The terms of the contract included the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising, as described above. This labeling, marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the National Class and Defendant.

75.     Plaintiff and members of the National Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

76.     Defendant breached express warranties about the Products and its qualities because Defendant's statements about the Products were false and the Products do not conform to Defendant's affirmations and promises described above.

77.     Pursuant to 810 ILCS 5/2-607(3)(a), on November 7, 2016, Plaintiff, on behalf of himself and the National Class, provided GNC with sufficient notice of GNC's breach of the express warranties provided on the labels of its L-Glutamine dietary supplement Products. In his letter to GNC, Plaintiff also enclosed a draft copy of this class action complaint, which included the scientific studies and citations showing that glutamine supplementation has been found to completely ineffective in supporting recovery from exercise or the recovery of muscle tissue. By providing pre-suit notice, Plaintiff has effectively notified GNC of the troublesome nature of his transaction within a reasonable time of discovering the breach.

78.     Despite the above notice and other information to GNC that its L-Glutamine Products do not meet GNC's warranties and in fact fail in many respects to perform consistent with the Products' representations, GNC continues to hide the facts from consumers and fails to correct the material misrepresentations regarding defects of its Products. Rather, GNC continues to market and sell the Products as providing, *inter alia*, "anti-catabolic effects," "supports muscle function," and/or "supports faster recovery after workouts."

79.     Actual and/or constructive notice was duly given to GNC of the breaches of these warranties, and GNC has yet failed to cure.

80.     Plaintiff and each of the members of the National Class would not have purchased the Products had they known the true nature and quality of the Products.

81.     As a result of Defendant's breach of warranty, Plaintiff and each member of the National Class have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from their purchases.

## COUNT IV
### Unjust Enrichment
### (In the Alternative to Count III and on Behalf of the National Class)

82.     Plaintiff incorporates paragraphs 1 through 56 as if fully set forth herein.

83.     Plaintiff and the other members of the National Class conferred benefits on Defendant by purchasing the Products.

84.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the other members of the National Class's purchase of the Products. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, and caused injuries to Plaintiff and the other members of the National Class because they would have not purchased the Products if the true facts would have been known.

85.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the other members of the National Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the other members of the National Class for its unjust enrichment, as ordered by the Court.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully request that the Court enter judgment as follows:

A.     Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

B.   Enjoining Defendant from engaging in the unlawful conduct set forth herein;

C.   Awarding restitution of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

D.   Requiring disgorgement of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

E.   Ordering Defendant to pay actual damages to Plaintiff and the other members of the Classes;

F.   Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Classes;

G.   Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes invoked above, to Plaintiff and the other members of the Classes;

H.   Ordering Defendant to pay attorneys' fees and litigation costs incurred in the course of prosecuting this action;

I.   Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

J.   Leave to amend this Complaint to conform to the evidence presented at trial; and

K.   Ordering such other and further relief as may be just and proper.


Dated: November 30, 2016                    Respectfully submitted,

                                            By:   _/s/ Michael L. Silverman_____
                                                   Michael L. Silverman


                                            Klint L. Bruno
                                            *kbruno@brunolawus.com*
                                            Michael L. Silverman
                                            *msilverman@brunolawus.com*
                                            **THE BRUNO FIRM**
                                            900 West Jackson Boulevard
                                            Suite 4E
                                            Chicago, Illinois 60607
                                            Phone: 773.969.6160

Nick Suciu III
*nicksuciu@bmslawyers.com*
**BARBAT, MANSOUR & SUCIU PLLC**
1644 Bracken Road
Bloomfield Hills, Michigan 48302
Phone: 313.303.3472

***Counsel For Plaintiff
And The Proposed Putative Classes***